Good morning, Your Honor, and good morning to the Court. If it may please the Court, my name is Richard Holcomb, and I'm here on behalf of the Plaintiff Appellant Andrew Namiki Roberts. In this case, the Plaintiff and, importantly, his counsel, challenged the legal premises that the District Court used to determine the fees award. Specifically, the District Court found that there is a distinction between the prevailing rates in the community, i.e., what one might charge and collect from a client, and the prevailing rates awarded by the Court. We submit that upon de novo review, this Court should find error in such a demarcation between the rates that I would expect from a paying client versus an indigent plaintiff that I am representing in line with Congressional intent on a fee-shifting statute. The Supreme Court has specifically found that counsel for prevailing parties should be paid, as is traditional with attorneys compensated by a fee-paying client, and that is in Rivera v. City of Riverside. They have also stated that also, at a number of points, the legislative history of Section 1988 reveals Congress's basic goal that attorneys should view civil rights cases as essentially equivalent to other types of work they could do. And this Court, in the context of FDCPA cases, has also specifically found that in order to encourage able counsel to undertake FDCPA cases, it is necessary that counsel be awarded fees commiserate with those which they could obtain by taking other types of cases. The Camacho case, and again in Moreno, which I have relied heavily on. This Court condemned a policy of awarding different rates in civil rights cases, no matter how well administered or intentioned. That's just inconsistent with the policy that the Supreme Court has adopted to award fees in 1988 cases. Accordingly, we believe that awarding plaintiff's counsel, in a fee-shifting scenario where the client is indigent, we believe that to award those attorneys an hourly rate of approximately two-thirds what they would expect to be paid by paying clients is an incorrect legal premises on which an award should be based. As the City observes in their answering brief, this issue has plagued me for a number of years in a variety of cases. It has plagued other counsel in the District of Hawaii. Onishi v. Redline Recovery Services was quoted by Judge Kaye when Judge Kaye applied this legal premise in this case. Your knowledge is, I don't know if you practiced at all beyond the District of Hawaii, but to your knowledge, is there this sort of discrepancy in other districts across our country? Not to my knowledge, Your Honor. I have very little experience traveling around to other districts, I will concede. And my reading of Marino is that any such policy should be condemned. Well, the Court seemed, aside from these statements about it's not, he starts out by saying it's the market rates, and he says there's a distinction between the prevailing rates, what one may charge and collect from a pile, and the prevailing rates avoided by the Court. But then he basically says that the record, that the rates given in the record are sort of all over the place, and he doesn't quite know what to do with them. Well, okay. So I agree that the different attorneys that I have as declarants charge different rates, but those rates are all well above what I'm being awarded. And moreover, Your Honor, these discrepancies, insofar as they exist, should not result in a plaintiff's lawyer for an energy decline in a fee-shifting case to be awarded approximately two-thirds of the hourly rate that they would expect when they go, when they have a paying client. The issue, the way that I look at these declarations in any disparity is, I would be better off to have a paying client, even at the lowest rate from lawyers less experienced than me, than I would to take up these types of issues. Does the record show that, I know there was some discussion about it, but that the rates awarded in bankruptcy cases are significantly higher? Your Honor, I pulled that from a footnote, I believe, the Hawaiian Telcom bankruptcy decision, where a lawyer there under a similar fee-shifting statute, as I understand, was paid significantly more. Now, I don't think that reflects the actual prevailing market rate, but I will note there's also evidence from these past awards that an attorney such as Paul Alston, who I saw on the docket today and I believe to be perhaps the most senior attorney in Hawaii, his normal billing rate is $675 an hour. Yet, when he would apply for fees under the past awards that I have cited, he would be capped at approximately $350 an hour. Where do you get this from? Your Honor, it is briefed extensively in the cases. But in these past awards, and I can't recall right off the top of my head if it's in Harris v. Trashman or the All v. Funding Group, but in my brief it is cited with citations where they talk about the senior cap of $350. That's not relevant here directly. It's not relevant to me other than that it goes to show that the incorrect legal premises of awarding lawyers less for these fee-shifting cases is applied even at the senior level. Now, my problem, being a less than senior attorney, is that my hourly rate kind of rolls downhill from what the senior cap would be. So I hope that that answers your question. Do you want to talk about the other issue at all? I'm sorry, Your Honor? Do you want to talk about the other issue at all? I think that the hourly rate is more. The other issue being this compensation for the preliminary injunction. That's correct, Your Honor. So our position on that, the long and short of it is that the city should not be permitted to wait until 12-16 a.m. on the day that they knew that I had intended on filing these motions and then say, well, you never filed them so you shouldn't get paid. This was unnecessary work because we did respond. And that's the type of issue I believe in the reply brief is briefed very well. That I run into throughout this litigation because when I first filed the case, I came to them and said, hey, let's settle these issues. Let's not accrue any more attorney's fees. I didn't file that motion that could have been filed contemporaneously. Does it make any difference that the only outstanding issue at the time that your firm was working on, the preliminary injunction, was, in fact, the dispute over the correct amount of attorney's fees? Well, I think it does, Judge. That's part and parcel of my ability to settle. So if you look at the settlement agreements that I sent to them, the first one says, okay, the city is going to pay this amount. Then it says, the second one says, okay, the city can go to city council and get approval. And only if city council doesn't give approval, we would then apply for attorney's fees. And then finally, they said, well, you just need to apply for the attorney's fees. But did they, I mean, was there a written, detailed settlement agreement before you filed on December 28th, even as to merits? There was some agreement in principles. We had agreed, yes. I concede that we had agreed in principle to everything except the amount of attorney's fees. Now, I only have 30 seconds left. I would like to reserve a little bit of time here, but I do want to answer your questions. All right, why don't you reserve? We'll give you a minute. Thank you, Your Honor. Thank you. May I please court Nicolette Winter, appearing on behalf of Defendant Pali, city and county of Honolulu. It is plaintiff's burden in this case to submit satisfactory evidence of the prevailing market rate for attorneys of similar skill, experience, and reputation for similar services. And plaintiff in this case. That's not what the district court said. I mean, you know, maybe on a do-over you prevail, but what the district court said was that the rate that is given in the District of Hawaii is not the rate that could be charged to a client. I think the language inciting Onishi and the owl case. I think that in the context that it's cited, I think it could be read to be interpreted as saying that there's such a thing as a high charger and that the court is not bound to is not bound to any particular charging rate by an attorney. And the owl language is to ensure consistency within this district. The court is guided by the hourly rates generally awarded in this district, not the amounts charged to clients, nor rates that appear to be outliers. And I, excuse me, a test of the hourly rates charged to clients has been awarded by the courts in this district. So what if they were in fact charged to clients? Indeed, there's a distinction between the prevailing rates in the community, i.e. one might charge and collect from a client and the prevailing weight rates awarded by the court. And then it quotes, to ensure consistency within the district, the court is guided by the hourly rates generally awarded in this district, not the amounts charged to clients, nor rates that appear to be outliers. So if it's not, what is the market rate other than the amounts charged to and paid by clients? If, even if the language is incorrect, which I agree that it is somewhat confusing, but even if it's not consistent with the prevailing market rate, this court can affirm on the alternative basis, which is essentially the next paragraph. The court starts off saying, moreover, the court agrees with the magistrate judge that the declarations attest to the rates that vary significantly. And the variation in the declarations indicates that the court must look to other hourly rates typical in this district in order to gain a better sense of what is reasonable. So this court can affirm on any basis in the record. And even if the reasoning is incorrect in the prior paragraph, this court can affirm on the basis that the court looked at the declarations. It didn't say, I'm not going to look at them. It looked at the declarations and said, there's no tie to skill, experience, and reputation, even with respect to the lowest charging client at $250. There's no connection to skill, experience, and reputation for similar services. The court was well within its discretion to look at other awards by the court, other similar awards by the court for the specific attorneys. And this court, this district court has some experience with Mr. Holcomb and a little bit of experience with Mr. Beck. If you look at the Hawaii Defense Foundation case, they talk about arguments being presented in a somewhat rambling fashion. They say that counsel, again, misunderstands how to present evidence. And they talk about sloppiness. And Mr. Beck and Mr. Holcomb were both in that case. And then in the DeOccupy case, the court notes at least four glaring mistakes that even the most junior attorneys should not be making. And it talks about fundamental lack of experience and or understanding of the federal litigation. And then you have the Tune James case where a plaintiff was merely awarded $21 and the attorneys got $12,000 in attorney's fees, even though the court went out of its way to say that there was no public benefit, there were no important civil rights. So... Are you suggesting that this is not the practice in the State of Hawaii, in the District of Hawaii, even though it's... I'm suggesting that it's not the practice in the State of Hawaii, in the District of Hawaii, that there is a distinction between the market rate and the rates awarded. And why do they keep saying these things? Well, I think the language... If you actually look at the cases cited, Onishi and Au, they cite to the correct standard. They say, based on this court's knowledge of the community prevailing rates and hourly rates generally granted by the court, this court finds that... Reasonable hourly rates should reflect the prevailing market rates in the community. And so both the Au case and the Onishi case cite to the correct standards. And I believe that what they're attempting to say is just that the court is not bound to any particular rate, either by plaintiff's counsel or by other outliers. And Au does use that language, outlier. And so I believe that's what the language means. But even if it's incorrect, if this court were to rule in favor of plaintiff, it would essentially be overruling the prior cases where this court awarded Mr. Holcomb and Mr. Beck fees. And those cases didn't cite to Onishi and Au. They didn't cite to that same confusing language. They cited to the correct standards. The case of this court or of the District Court? Sorry, the District Court of Hawaii had the Hawaii Defense Foundation. All we would be saying is that you have to apply the right standard. I'm sorry? All we would be saying is that this standard, that there's a difference between what one might charge a client and the prevailing rates awarded by the court is incorrect. I'll do it over again. Well, I think if the overall standard is incorrect, then this court could remand for the court to apply the correct standard. However, in this case, it would be no different because the court went on to look at the declarations of the attorneys and found that they vary without explanation and that because they don't provide meaningful guidance, the court was justified. Apparently, all he was trying to show is that at least it should be more than what he got, essentially, that the rates charged are more than what he was being given. I agree, but even with respect to the attorney whose declaration is $250 per hour, I don't believe that there is any indication that he's the same skill, experience, and reputation of Mr. Holcomb or Mr. Beck with respect to similar services, which also takes into account it has to be similar complexity. So this case is a straightforward case that there was only one pleading filed. It's a direct application of the Futuda's case. It's not complex at all. And so without meaningful guidance with those declarations and all the other evidence, which is frankly either irrelevant or counterproductive, the court was well within its discretion to use recent past awards that took into account the attorney's skill, experience, and reputation. With respect to the second issue, the court was well within its discretion in denying a portion of the fees awarded for work done on the motion for preliminary injunction and motion for judgment on the pleadings that were done on December 26 and 27, 2015, which was after the parties had agreed to settle everything with the exception of attorney's fees. Was there a written agreed-upon language at that point? I know there were drafts of the releases being circulated. I don't believe that. And I know the most recent one, I believe, just had the attorneys apply to the court, and that's how they resolved their differences in attorney's fees. But I'm not sure if it's in the record at what point. I don't know the answer either, and I need to find out. But if, for example, what you had was a verbal agreement to principles, but not – I mean, we all know that settlements fall apart once people start to write things down. Now, there were drafts, as I understand it. And whether they were specifically agreed upon or not, except for the fees, I don't know. Right. And I think that's a factual question. And as long as one permissible view of the evidence – Well, I know. But did the district court say that? Did they say that it was actually – that the language, not just the concepts, were actually agreed upon? No. What the court said was that it was unlikely that the settlement would fall through at that point in time. And the evidence to support that would be that on December 4th, the parties tentatively agreed to settle all issues with the exception of attorney's fees. And on December 28th, there's a letter from counsel from the city that says that it's my understanding that HPD is prepared to arrange the return of your client's firearms and to perform the other acts demanded with respect to the two permits. And then there's a letter on the 28th back from Mr. Holcomb saying that he wants to use this as a vehicle to increase his fees and that I'm going to file the motion for judgment on the pleadings and motion for preliminary injunction today. But, in fact, no motion for preliminary injunction or motion for judgment on the pleadings was filed. And there's no explanation to that – as to that in the record. So I think those pieces of evidence are more than sufficient for one permissible view of the evidence to be that settlement would not fall through at that point. Unless the court has any questions, I would, in sum, ask that this court affirm the district court's word of attorney's fees in this case because the district court did not abuse its discretion. Thank you, counsel. Thank you very much. Thank you. Mr. Holcomb, you have a minute. Thank you, Your Honor. So I want to point out, first of all, there are no findings here that I'm – of what a terrible lawyer I am. I want all of those cases cited by the city. And, in fact, Judge Kaye was complimentary of the techniques that I used to achieve settlement in this case. I would also note that the December 28th correspondence, I disagree with her analysis of what those say. Those are in the record, can be reviewed if you believe it's important. What I think is important is – What about the fact that the motion was never filed? Well, Your Honor, it was never filed because I finally received – I told them before I was going to file it on December 28th. December 28th at 1216 a.m. is the time that I receive a response back from the city. And they said, well, we've got this settlement agreement now. Well, that's fine with me, so there's no need to file it. The problem is causing a plaintiff's lawyer to do all this work and then waiting until the last minute and saying, hey, we're going to now do this. We're now going to settle this. Which days were the fees charged for? The – 26th and 27th or 27th and 28th? I believe the – Judge Kaye had set a cutoff date of after November 25th. So he paid me for time up until – Right, but wasn't there charges also on the 28th? I'm sorry, Your Honor? Were there charges also on the 28th? There may have – regarding the preliminary injunction motion? Right. I would have to review the timesheets. I don't recall that being the case. Well, how was it an abuse of discretion for Judge Kaye to say that the – that preparing those documents did not serve to advance the litigation? Why was that an abuse of discretion? Well, Your Honor, I think it's an abuse of discretion because the city – it would create a situation where the city is permitted to not respond, despite a plaintiff's lawyer's opportunity or invitations to try to settle the matter, causing the plaintiff's lawyer to accrue all this work. At the end of the day – But the work didn't have to be incurred. That was kind of an artificial deadline. It wasn't as if there were a statute of limitations problem or some reason that those had to be filed by a particular date. That is correct, Your Honor. And had they called me and said, hey, we need a few more days or don't do this, we are going to take care of it, then I wouldn't have performed the work. But they didn't do that. Instead, they allowed me to perform the work knowing that I would do it. And at the end of the day, we are trying to attract competent counsel to take these types of cases, and I suggest that if we allow a party to cause the other party to do a bunch of work for which they never get paid, that contradicts the statute's purpose, which is to attract competent counsel. But in any event, there was not, on December 28th, an agreement to an actual set of terms. So, yes. The settlement agreement – well, actually, they sent me the settlement agreement the 28th, as I recall. By the 30th, I had my client sign off on it. So all work has quit then. And then it took them until, I believe, January 21st to execute the agreement. Now, there is a reality of being a plaintiff's lawyer versus a government or corporate lawyer defending one of these cases that I don't think we should overlook, and that is I have a client, a physical human being that is looking to me saying, why isn't this fixed yet, and I'm under pressure to try to move things along. So that's why I did set the deadlines. I've had a very good relationship with corporation counsel that was involved in this case, and I had texted and sent emails, hey, what's going on? But at some point, a plaintiff's lawyer needs to be able to do the work and expect compensation that needs to be done to advance the case, should it not so. The alternative scenario could have been December 28th at 1216 a.m., and Mr. Sherwood emails me and says, we can't agree to any of these terms. So then where am I? And, you know, two months into the litigation at this point. All right. Thank you, counsel. Thank you. Roberts v. City and County of Honolulu is submitted.
judges: Wardlaw, Berzon, Rawlinson